UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at GREENEVILLE

JAY ROY DENTON, JR.        )
                           )
v.                         )     NO. 2:11-cv-218
                           )     *Greer/Inman*
SOUTHERN HEALTH PARTNERS   )

**MEMORANDUM and ORDER**

Acting *pro se*, plaintiff Jay Roy Denton, Jr., a prisoner in the Washington County Detention Center (WCDC) in Jonesborough, Tennessee, brings this civil rights action for injunctive and monetary relief, 42 U.S.C. § 1983, alleging violations of his Eighth Amendment right to medical care, (Doc. 1). The sole defendant is Southern Health Partners, the provider of health care to WCDC inmates.

Plaintiff's application to proceed without prepayment of the filing fee is **GRANTED**, (Doc. 3), and he is **ASSESSED** the civil filing fee of $350.00.

Therefore, under 28 U.S.C. § 1915(b)(1)(A) and (B), the custodian of plaintiff's inmate trust account at the institution where he now resides shall submit to the Clerk, as an initial partial payment, whichever is the greater of: (a) twenty percent (20%) of the average monthly deposits to plaintiff's inmate trust account; or (b) twenty percent (20%) of the average monthly balance in plaintiff's inmate trust account for the six-month period preceding the filing of the complaint.

Afterwards, the custodian shall submit twenty percent (20%) of plaintiff's preceding monthly income (or income credited to his trust account for the preceding month), but only when such

monthly income exceeds $10.00, until the full filing fee has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

The Clerk of Court is **DIRECTED** to send a copy of this memorandum and order to the custodian of inmate accounts at the correctional facility wherein plaintiff is housed to ensure collection of the incremental payments of the filing fee. All payments should be sent to the following address: Clerk, U.S. District Court; 220 West Depot Street, Suite 200; Greeneville, TN 37643.

## I. Screening the Complaint

The Court must now review the complaint to determine whether it states a claim entitling plaintiff to relief or is frivolous or malicious or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2) and § 1915A. If so, this suit must be dismissed. In performing this task, the Court bears in mind the rule that *pro se* pleadings filed in civil rights cases must be liberally construed and held to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Still, the complaint must be sufficient "to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), which simply means the factual content pled by a plaintiff must permit a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The Court examines the complaint in light of those requirements.

## II. Plaintiff's Allegations

In his pleading, plaintiff claims that, On February 6, 2011, he was assaulted by another inmate. His back and neck were wrenched and his head was slammed into the concrete. An officer

2

escorted him to see medical personnel. One of the male nurses employed by defendant observed plaintiff and his injuries, then stated to him "You look okay, you have a knot on your head, knots are a good thing, and you're not excited, you seem to be fine, go back to your cell and let us know if you have any problems." Plaintiff was escorted back to his cell.

At 11:15 p.m. and 11:30 p.m., plaintiff pushed the intercom/panic button and asked the officer who responded to inform defendant's employees that he was having pain. At 3:00 a.m., four hours after the assault, Ibuprofen 500 mg was delivered to plaintiff, along with his regularly scheduled medication. Plaintiff asked Beverly, another of defendant's employees, if he could be taken to the hospital for treatment, and she replied sarcastically, "I don't think so." Later, Beverly called back to plaintiff's housing unit to ask that the plaintiff be informed that the mobile X-ray unit would be at the jail the next day to X-ray his spine. Yet, since that date, plaintiff has not received anything for pain.

Plaintiff asserts, however, that he has received threats from Emily Mensch, defendant's Medical Administrator, in response to telephone calls from Plaintiff's mother, who apparently was attempting to intervene on behalf of her son with respect to his medical treatment. One threat was conveyed by Heather, defendant's employee, who reported: "Per Emily, if your mother calls again[,] it's gonna get ugly." When plaintiff responded that he could not control his mother, Heather replied, "You know who it'll come down on."

On February 8, 2011, plaintiff filed a medical grievance concerning the incident, and thereafter was escorted to see Ms. Mensch and Heather. Ms. Mensch said, "If I threaten you, you'll know it. I will follow through with it and carry it out. So stop bugging me, my nurses, and the officers! Just because you got your a _ _ beat doesn't mean we take you to the hospital for an MRI!"

3

Ms. Mensch deemed the medical grievance to involve a matter not subject to a grievance, ripped up the medical grievance, and stated, "I don't have to like you, be your friend, or be nice to you. I simply have to keep you alive. Now get your a _ _ back to your cell."

Plaintiff filed another grievance the next day, complaining about his previous day's encounter with Ms. Mensch, the violation of grievance procedures, and Ms. Mensch's lack of professionalism and the disrespect she showed to him. Plaintiff maintains that the grievance procedures are established to prevent incidents from occurring such as he experienced in his encounter with Ms. Mensch on February 8th.

Once again, plaintiff was escorted to the medical station. On February 15, 2011, the grievance he filed was deemed non-grievable by Ms. Mensch, who stated, "Instructions have been given to nurses to not issue plaintiff any grievance concerning this issue. Plaintiff continuously complaining of pain."

In response to plaintiff's sick call form on February 20, 2011, Heather, defendant's employee, explained that the reason plaintiff had not been seen was that "[t]hey're waiting on Dr. Pinnell" to come to the WCDC. Plaintiff was seen by Dr. Pinnell on February 23, 2011, and has yet to receive any medical help.

Plaintiff's summary of the treatment he has received consists of two Ibuprophen 500 mg and a mobile X-ray, but he complains that what he has not received, but should have received, is a consultation with a specialist, since spinal columns are unique and require a specialist to treat spinal injuries. Plaintiff also fears that his injury is more serious than could be discerned on any X-ray, as he suffers "painful pins-n-needles" and burning sharp pains in his left arm and leg, which causes numbness and loss of use of those limbs, from time to time.

4

### III. Discussion

**A. Medical Claims**

    1. *The Law*

Prison authorities who are deliberately indifferent to the serious medical needs of prisoners violate the Eighth Amendment rights of those prisoners. *Estelle v. Gamble*, 429 U.S. 97 (1976). An Eighth Amendment claim is composed of two parts: an objective component, which requires plaintiff to show a "sufficiently serious" deprivation, and a subjective component, which requires a showing of a sufficiently culpable state of mind —one of deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834 and 842 (1994).

Deliberate indifference is illustrated by a prison official who acts or fails to act despite knowledge of a substantial risk of serious harm to an inmate under his care. *Id.* However, where a prisoner receives some medical care and the dispute is over its adequacy, no claim has been stated. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). By the same token, no viable Eighth Amendment claim is stated by allegations that a medical condition has been negligently diagnosed or treated, and the mere fact that the victim happens to be a prisoner does not convert it into a constitutional violation. *Estelle*, 429 U.S. at 106.

    2. *Analysis*

The Court simply does not see constitutional violations here because there is no evidence of deliberate indifference. Plaintiff's contentions do not indicate that defendants disregarded his need for medical care, as he was given a dose or two of pain medication and a diagnostic X-ray. *Farmer*, 511 U.S. at 835-36 (concluding that, by taking reasonable measures to abate the harm, a defendant avoids liability, even if the harm is not averted).

Plaintiff's claim that his injury was treated inadequately amounts to no more than an assertion of medical negligence. *Estelle* teaches, however, that this type of an allegation fails to state a claim which entitles a prisoner to relief under § 1983. *See Estelle*, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."); *see also Comstack v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) (A claim of deliberate indifference requires more than negligence or a misdiagnosis of a medical condition.).

Moreover, plaintiff's assertions that his injury may not be susceptible to diagnosis by an X-ray and that spinal injuries are unique and require treatment by a specialist do not rise to the level of a constitutional violation. The Eighth Amendment does not require that every request for medical care made by prisoner be honored. *Fitzke v. Shappelle*, 468 F.2d 1072, 1076 (6th Cir. 1972). Likewise, "the question whether . . . additional forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment." *Estelle*, 429 U.S. at 107; *see Shedden v. United States*, 101 Fed. Appx. 114, 115, 2004 WL 1327926, *1 (6th Cir. June 11, 2004) (finding inmate's contention that he was not referred to an orthopedic specialist for treatment did not state an Eighth Amendment claim); *Layne v. Vinzant*, 657 F.2d 468, 473 (1st Cir. 1981) (concluding that "[t]he right to be free from cruel and unusual punishment does not include the right to treatment of one's choice").

**B. Unprofessional Behavior**

Additionally, treating plaintiff disrespectfully, as Ms. Mensch and other nurses are alleged to have done, does not impinge on plaintiff's rights. Though this claimed behavior may be rude and

6

unprofessional, it is not unconstitutional. *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004); *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) ("Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."). These alleged acts of speaking to plaintiff in a disrespectful and unprofessional manner does not state a valid § 1983 claim.

## C. The Named Defendant

Plaintiff explains in his pleading that he has named Southern Health Partners as the defendant because this entity holds the contract for provision of health care to WCDC inmates and because it is liable for proper medical treatment being given to patients under the care of its employees. Yet, plaintiff has not asserted that defendant directly participated in the constitutional violations. If plaintiff is predicating these claims on respondeat superior, which arises "'solely on the basis of the existence of an employer-employee relationship,' regardless of whether the employer had any part in causing harm," *Santiago v. Warminster Tp.*, 629 F.3d 121, 128-129 (3d Cir. 2010) (quoting *Monell v. Dep't of Soc. Servs*, 436 U.S. 658, 692 (1978)), he cannot succeed because respondeat superior is not a valid theory for recovery under § 1983. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Monell*, 436 U.S. at 691; *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

## D. Grievance Procedure

Lastly, plaintiff maintains that Ms. Mensch and the other health care providers who are discussed in his complaint mishandled his grievances and, thus, concludes that he was denied his right to a grievance system. Prisoners, however, have "no constitutionally protected due process interest in unfettered access to a prison grievance procedure. "*Walker v. Michigan Dept. of Corr.*,

7

128 Fed. Appx. 441, 445, 2005 WL 742743, *3 (6th Cir. Apr. 1, 2005) (listing cases); *see Adams v. Rich*, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."). Accordingly, these assertions fail to state a claim for relief under § 1983.

## IV. Conclusion

Based on the above discussion, the Court finds that plaintiff has failed to state a claim against the defendant. The allegations are not remediable by amendment, *see LaFountain v. Harry*, _ F.3d _ , _, 2013 WL 2221569, *5 (6th Cir. May 22, 2013) ("[U]nder Rule 15(a), a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA."), and this case will be dismissed *sua sponte*.

A separate order shall enter.

**ENTER**:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE